# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

August 17, 2004

Mr. Stephen D. Thomas
Executive Director
Texas Residential Construction Commission
Post Office Box 13144
Austin, Texas 78711

Opinion No. GA-0233

Re: Whether the Texas Residential Construction Commission Act excludes from its definition of "builder" businesses and individuals engaged in residential construction and licensed by a municipality, and whether the Texas Residential Construction Commission may seek to enjoin builders who have failed to obtain a certificate of registration from the Commission (RQ-0176-GA)

Dear Mr. Thomas:

You ask two questions about title 16 of the Property Code, the Texas Residential Construction Commission Act (the "Act").[1]

## I. Background

During its Seventy-eighth Regular Session, the Texas Legislature enacted House Bill 730, which created the Texas Residential Construction Commission (the "TRCC") to regulate the residential construction industry at the state level. *See* Act of May 27, 2003, 78th Leg., R.S., ch. 458, 2003 Tex. Gen. Laws 1703 (enacting title 16, chapters 401 to 438 of the Texas Property Code). The Act charges the TRCC with adopting limited statutory warranties and developing performance standards for residential construction. *See* TEX. PROP. CODE ANN. §§ 430.001-.011 (Vernon Supp. 2004) (chapter 430). A significant portion of the Act is devoted to establishing a state-sponsored inspection and dispute resolution process designed to significantly reduce the need for litigation when residential construction disputes arise between builders and their customers. *See* HOUSE COMM. ON REGULATED INDUSTRIES, BILL ANALYSIS, Tex. Comm. Substitute, H.B. 730, 78th Leg., R.S. (2003) (Background and Purpose); *see also generally* TEX. PROP. CODE ANN. §§ 426.001-430.011 (Vernon Supp. 2004) (subtitle D). Participation in the dispute resolution process is a prerequisite to legal action resulting from home construction transactions governed by the Act. *See id.* § 426.005.

---

[1]*See* Letters from Stephen D. Thomas, Executive Director, Texas Residential Construction Commission, to Honorable Greg Abbott, Texas Attorney General (Jan. 28, 2004 and Feb. 19, 2004) (on file with Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter and Supplemental Letter].

Germane to your questions, the Act defines those individuals and entities subject to the TRCC's rules and regulations, *see id.* § 401.003, and gives the TRCC the authority to adopt rules necessary to implement the Act's provisions, *see id.* § 408.001. Your first question asks about the extent to which TRCC may enforce the Act's provisions. *See* Request Letter, *supra* note 1, at 1. Your second question concerns the meaning of "builder" as it has been defined under the Act. *See* Supplemental Letter, *supra* note 1, at 1. For conceptual simplicity, we address your questions in reverse order.

## II.    "Builder"

Section 401.003 of the Act defines "builder" as

> any business entity or individual who, for a fixed price, commission, fee, wage, or other compensation, constructs or supervises or manages the construction of:
>
> (1)   a new home;
>
> (2)   a material improvement to a home, other than an improvement solely to replace or repair a roof of an existing home; or
>
> (3)   an improvement to the interior of an existing home when the cost of the work exceeds $20,000.

*See* TEX. PROP. CODE ANN. § 401.003(a) (Vernon Supp. 2004). The term includes:

> (1)   an owner, officer, director, shareholder, partner, affiliate, or employee of the builder;
>
> (2)   a risk retention group governed by Article 21.54, Insurance Code, that insures all or any part of a builder's liability for the cost to repair a residential construction defect; and
>
> (3)   a third-party warranty company and its administrator.

*Id.* § 401.003(b). However, the term "builder" in the Act excludes

> any business entity or individual who has been issued a license by this state or an agency or political subdivision of this state to practice a trade or profession related to or affiliated with residential construction if the work being done by the entity or individual to the home is solely for the purpose for which the license was issued.

*Id.* § 401.003(c). This exclusion gives rise to your question.

You note that "some cities in Texas have ordinances requiring those who perform certain home repairs and renovations to register with the city." Supplemental Letter, *supra* note 1, at 2-3. As examples, you refer to home improvement ordinances in San Antonio and Dallas that apparently authorize the issuance of licenses to businesses and individuals engaged in home repair and renovation, *see id.* at 3,[2] activities which we may assume place these businesses and individuals within the Act's general definition of "builder." Because the Act excludes from the definition of "builder" "any business entity or individual who has been issued a license by this state or an agency or political subdivision," TEX. PROP. CODE ANN. § 401.003(c) (Vernon Supp. 2004), you ask:

> Are persons who have registered under a municipal ordinance to perform home repairs within the municipality excluded from the provisions of House Bill 730 that relate to "builders" because of the language in Property Code § 401.003(c)?

Supplemental Letter, *supra* note 1, at 1.

The exception to the definition of "builder" is much more narrow than your question suggests. Section 401.003(c)'s relevant text does not end at excluding just those business entities and individuals that have been issued licenses by the state and its political subdivisions. Rather, the subsection's language modifies that clause and narrows the exclusion to those businesses and individuals that have received licenses "to practice a trade or profession *related to or affiliated with* residential construction." TEX. PROP. CODE ANN. § 401.003(c) (Vernon Supp. 2004) (emphasis added). To properly address your question, then, we must understand what it is to be a trade or profession related to or affiliated with residential construction.

In this respect, we generally agree with your interpretation of the Act. You state that "the [TRCC] interprets the exclusionary language in the definition of 'builder' in Property Code § 401.003(c) to exclude trade professionals, such as state-licensed plumbers, electricians and air conditioning contractors, if their work on a home is limited to the type of work for which they hold a license." Supplemental Letter, *supra* note 1, at 3. Section 401.003(c) also excludes trades and professions licensed by *political subdivisions* of the state, provided that the licensed trades and professions are only related to or associated with residential construction. *See* TEX. PROP. CODE ANN. § 401.003(c) (Vernon Supp. 2004).

"In construing a statute, . . . a court may consider among other matters the . . . administrative construction of the statute . . . ." TEX. GOV'T CODE ANN. § 311.023(6) (Vernon 1998); *see Osterberg v. Peca*, 12 S.W.3d 31, 51 (Tex. 2000), *cert. denied*, 530 U.S. 1244 (2000); *Ins. Co. of State of Pa. v. Stelhik*, 995 S.W.2d 939, 943 (Tex. App.–Fort Worth 1999, pet. denied)

---

[2]San Antonio's ordinance states in relevant part: "The owner of a business and all partners of a partnership and all officers of a corporation who are actively engaged in the performance of home improvement service must qualify for the license required by this division." SAN ANTONIO, TEX., CODE OF ORDINANCES, ch. 16, art. IV, div. 2, § 16-82 (2004), *available at* http://livepublish.municode.com/18/lpext.dll?f=templates&fn=main-j.htm&vid=11508. This office does not interpret city ordinances in the opinion process, *see* Tex. Att'y Gen. Op. No. JC-0485 (2002) at 1, and therefore, we cannot comment further on these ordinances' specific requirements.

(interpretation of Texas Workers Compensation statute in memo to field officer by executive director who is charged with enforcing statute was entitled to serious consideration in construing statute). In addition, this office has maintained that so long as an agency's interpretation is a reasonable one that does not do violence to the statutory language, this office will defer to it. *See* Tex. Att'y Gen. Op. No. JC-0330 (2001) at 2 (deferring to the Secretary of State's reasonable interpretation of the Election Code). As the agency responsible for enforcing the Act, your interpretation is entitled to serious consideration. Furthermore, your interpretation that section 401.003(c) excludes licensed trades and professions that are closely associated with residential construction is reasonable, and we defer to it.

Indeed, this reading comports with the Act's express goals. An essential purpose of the Act is to create state performance standards for residential construction and establish a state-sponsored inspection and dispute resolution process that assists consumers in resolving construction issues with their homebuilders. *See* HOUSE COMM. ON REGULATED INDUSTRIES, BILL ANALYSIS, Tex. Comm. Substitute, H.B. 730, 78th Leg., R.S. (2003) (Background and Purpose). "The lack of state performance standards for residential construction in Texas and case law makes it difficult for homeowners and homebuilders to resolve construction issues without costly and time consuming litigation." *Id.* To exclude business entities and individuals that fall within the general definition of "builder" from the requirements of the Act because a municipality licensed them to engage in residential construction would frustrate the obvious intent to standardize the entire residential construction industry at the state level. The exception could easily become the rule. Because a court will presume that the legislature in enacting a statute intended a "'result feasible of execution,'" *see In Re Missouri R.R. Co.*, 998 S.W.2d 212, 216 (Tex. 1999) (quoting TEX. GOV'T CODE ANN. § 311.021(4) (1998)), such a construction cannot stand.

Consequently, the exclusion articulated in section 401.003(c) excepts from the definition of "builder" residential construction-related trades and professions, such as plumbers and electricians. Any business entities or individuals falling within the general definition of "builder" that have a state or local license to engage in residential construction, such as home repair and renovation, as opposed to a related trade or profession, do not fit within the exclusion.

## III.    Commission Enforcement of the Act

You next ask us about section 416.001 of the Act, which provides that a "person may not act as a builder unless the person holds a certificate of registration under this chapter." TEX. PROP. CODE ANN. § 416.001 (Vernon Supp. 2004). The commission is charged with "adopt[ing] rules as necessary for the implementation of [the Act]," *id.* § 408.001, and as such, has adopted the rule that "all builders must register with the commission . . . in order to do business as a builder in the state of Texas." 29 Tex. Reg. 258 (2004) (emerg. rule 10 TEX. ADMIN. CODE § 303.1) (adopted Dec. 19, 2003, expired Apr. 16, 2004) (Texas Residential Construction Commission). In light of this rule, you write:

> It is the commission's intention to notice those persons of their obligation to become registered under the Act and to give those

> persons an opportunity to become registered. If a person fails to become registered after notice from the commission, the commission intends to seek the assistance of the Office of the Attorney General in enforcing the provisions of the Act, including bringing an action for equitable relief to enjoin a person who fails to become registered as a builder.

Request Letter, *supra* note 1, at 2. You ask:

> If the commission determines that a person is operating as a builder, as that term is defined in Property Code § 401.003, without having obtained a certificate of registration, and the person fails to register once having been notified by the agency of its obligation to do so, may the commission, with the assistance of the Attorney General, seek an injunction against that person to prevent further violation of the statute?

*Id.* at 1.

While the Act expressly provides for enforcement of administrative penalties levied against registrants, *see* TEX. PROP. CODE ANN. §§ 419.001-.004 (Vernon Supp. 2004) (chapter 419), it does not have a parallel provision for enforcing section 416.001's registration requirement, or any rules adopted by the commission that may be associated with this section. By contrast, other Texas agencies have specific authority in their enabling statutes that allow them to seek injunctive relief for future or present violations of their rules. *See, e.g.*, TEX. EDUC. CODE ANN. § 12.127(b)(2) (Vernon Supp. 2004) (Texas Education Agency – "On request of the commissioner, the attorney general may bring suit . . . for . . . injunctive relief . . . ."); TEX. AGRIC. CODE ANN. § 12.017(b) (Vernon 1995) (Texas Department of Agriculture – "On request of the department, the attorney general shall sue . . . to enjoin a violation or threatened violation of a rule adopted under this section."); TEX. GOV'T CODE ANN. § 511.014(a) (Vernon 1998) (Texas Commission on Jail Standards – "[T]he commission may bring an action in its own name to . . . enjoin a violation of . . . a commission rule . . . . The attorney general shall represent the commission."). The Act, TRCC's enabling statute, lacks this specific language.

However, Chapter 2001 of the Government Code, the Administrative Procedure Act, authorizes the attorney general to enforce state agency rules at the request of a state agency, despite an absence of specific language in the agency's enabling statute. *See* TEX. GOV'T CODE ANN. § 2001.202 (Vernon 2000). Specifically, section 2001.202 provides:

> (a) The attorney general, on the request of a state agency to which it appears that a person is violating, about to violate, or failing or refusing to comply with a final order or decision or an agency rule, may bring an action in a district court . . . to:

>                (1) *enjoin* or restrain the continuation or commencement of
> the violation; or
>
>                (2) compel the compliance with the final order or decision or
> the rule.
>
> (b) The action authorized by this section is in addition to any other
> remedy provided by law.

*Id.* (emphasis added).

The plain language of section 2001.202 provides TRCC an avenue to notify the attorney general of builders TRCC knows to be in violation of its registration rule and to request that the attorney general seek relief from these violations. Once notified, the attorney general may pursue all remedies to which the state is entitled, including injunction.

We note that in the two instances that the language of 2001.202 has been expressly considered in case law, Texas judges have been hesitant to read it as expansively as the plain language of the statute suggests it should be read. For example, in an opinion in which the majority did not address the issue, the dissent observed that an injunction may not always be the appropriate remedy, and section 2001.202 does not change the proof necessary to establish the propriety of injunctive relief. *See Priest v. Tex. Animal Health Comm'n*, 780 S.W.2d 874, 882 (Tex. App.– Dallas 1989, no writ) (Howell, J., dissenting) (construing Act of May 30, 1981, 67th Leg., R.S., ch. 816, § 2, 1981 Tex. Gen. Laws 3094, 3095, former article 6252-13a, § 19A of the Revised Civil Statutes, the substantively similar precursor to section 2001.202) ("We must hold that this . . . statute is no more than a general statement of principle that the State, its agencies, and its employees may obtain injunctive relief wherever the usages of equity forged out over the centuries make injunctive relief available and appropriate."). In addition, the Third Court of Appeals of Texas has questioned section 2001.202's applicability in the situation where violation of an agency's rule is expressly, and singularly, covered by a civil penalty. *See Tex. Health Care Info. Council v. Seton Health Care Plan, Inc.*, 94 S.W.3d 841, 852 (Tex. App.–Austin 2002, pet. denied) (dictum).

In *Seton*, the Texas Health Care Information Council, a state agency, required all health maintenance organizations to file a detailed annual report with the council. *See id.* at 844. Failure to produce the report was a violation of a council rule, which violation carried a civil penalty. *See id.* Seton Health Care Plan, Inc., a health maintenance organization (the "HMO"), failed to file the required report and was fined. *See id.* The HMO appealed the administrative ruling to the district court, and the state counterclaimed seeking the additional remedy of an injunction against the HMO by invoking section 2001.202. *See id.* at 844-45. The district court ruled in favor of the HMO, denying the state's injunction; the state appealed. *See id.* at 845.

The Third Court of Appeals, on the question of injunction, noted in dicta that the relevant section of the Health and Safety Code, which provided the council with the authority to assess the civil penalty of a fine, *only* provided for the civil penalty of a fine. *See id.* at 852 (dictum). The

court said, "[W]e may presume that the failure to provide for injunctive relief reflects a legislative purpose." *Id.* (dictum). Continuing, "We cannot say that the punishment provided, without the added remedy of an injunction, completely frustrates legislative intent." *Id.* (dictum). But the court was concerned with providing cumulative remedies when the agency's enabling statute expressly provided for just one. The dissent in *Seton* took the opposite view. *See id.* at 855 (Puryear J., dissenting) ("[S]ection 2001.202 specifically declares that injunctive relief may be sought *in addition to* any other remedy provided by the law.").

Ultimately, the *Seton* court based its holding on the state's inability to meet the proof necessary for an injunction to lie and not on section 2001.202's applicability. *See id.* at 853 ("The State's summary judgment evidence thus fails to prove that its right to the extraordinary remedy of a permanent mandatory injunction is so clear and compelling as to constitute an abuse of discretion on the part of the district court."). Even assuming a court would stand with the dicta offered in *Seton*, the situation in the present case is distinguishable. In *Seton*, the legislature had provided the Health Care Information Council with a remedy for a violation of the council's rules. Here, the legislature has not provided any remedy for a violation of TRCC's rules made pursuant to section 416.001 of the Property Code, and thus an injunction would not be cumulative of chapter 416's remedies. We believe that if a court were to be faced squarely with this legal context, it would hold that section 2001.202 provides the basis for enforcing TRCC's rules, including by injunction.

## S U M M A R Y

Section 401.003(c) of the Texas Residential Construction Commission Act does not exclude any business entities or individuals falling within the general definition of "builder" that have a state or local license to engage in residential construction. Section 401.003(c) does except from the definition of "builder" residential construction-related trades and professions, such as plumbers and electricians. Furthermore, section 2001.202 of the Administrative Procedure Act allows the Texas Residential Construction Commission to refer names of builders that have failed to register with the commission, a violation of a commission rule, to the attorney general, who may seek injunctive relief for those violations. The agency is permitted to do this even though its enabling statute lacks specific language to that effect.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee